**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

MVD SPECIALISTS, LLC,

      Appellant,

v.                                                      CV 07-1089 WJ/WPL

NICOLAE SGAVERDEA,

      Appellee.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

In this appeal from the bankruptcy court, MVD Specialists, LLC challenges two orders allowing Nicolae Sgaverdea, a debtor in possession, to exercise and assign an option to purchase real property. For the reasons that follow, I recommend that the bankruptcy court's orders be affirmed.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 1977, Plateau, Inc., as lessee, and Calvin P. and Ruth C. Horn, as lessors, entered into a lease agreement concerning property at 5565 Fourth Street Northwest in Albuquerque. (Doc. 103 ¶ 1.)[1] The lease granted Plateau an option to purchase the property under certain circumstances. (Lease ¶ 16.)[2] Plateau later assigned its lessee's interest to Thriftway Marketing Corp. (Doc. 103 ¶ 2.) In 1997, Thriftway subleased the property to Sgaverdea. (*Id.* ¶ 3.) The sublease granted Sgaverdea an option to purchase the property in accordance with the terms of the original lease.

---

[1] Unless otherwise indicated, all document numbers refer to the docket in bankruptcy case number 06-11063-m11, and all transcript citations refer to the hearing conducted in that case by Judge McFeeley on September 28, 2007.

[2] A complete copy of the lease is attached as an unnumbered exhibit to Document 84.

(Doc. 99 Ex. B ¶ 23, Ex. C ¶ 1.)  In 2006, Sgaverdea filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code.  (Doc. 1.)

On March 28, 2007, MVD purchased the property, thereby becoming the lessor under the lease.  (*See* Doc. 103 ¶ 10.)  On June 5, 2007, Sgaverdea notified Thriftway that he was exercising his option to purchase.  (*Id.* ¶ 13.)  The following day, Thriftway notified James Baird, the managing member of MVD, that it was exercising its option to purchase solely to effectuate Sgaverdea's option.  (Doc. 99 Ex. 3-4; Doc. 103 ¶ 14.)  Although Sgaverdea did not have the money to purchase the property, he entered into an arrangement with his gas supplier, Brad Hall Associates, to fund the transaction by purchasing the property and leasing it back to Sgaverdea.  (Doc. 103 ¶ 20; Tr. at 65-67.)  On June 26, 2007, Sgaverdea sent a purchase and sale agreement to MVD and attempted to open an escrow account for the transaction and to commence a title search.  (Doc. 99 Ex. 5-6; Doc. 103 ¶ 16.)  He and MVD engaged in negotiations until July 24, 2007, when MVD revoked its last offer.  (Doc. 103 ¶¶ 17-19.)

On July 25, 2007, Sgaverdea filed a Motion for Extension of Credit for the Purchase of Real Property Upon Simultaneous Closing or Alternatively Motion for Assignment of Rights Under Lease Agreement (Motion for Simultaneous Closing or Assignment).  (Doc. 84.)  Sgaverdea asserted in the motion that MVD refused to acknowledge his right to assign the option to purchase.  He sought permission from the court to purchase the property and transfer ownership to Brad Hall Associates in a simultaneous closing.  Alternatively, he sought enforcement of his contractual right to assign the option.  (*Id.*)  MVD opposed Sgaverdea's motion.  (Doc. 88.)

After conducting an evidentiary hearing, Judge McFeeley concluded that Sgaverdea had an option to purchase the property and that his exercise of the option was timely.  He found nothing in

the lease to preclude the simultaneous closing proposed by Sgaverdea. (Doc. 112 at 6-13.) Accordingly, it was not necessary to consider the parties' arguments regarding assignment of the option. (*Id.* at 1 n.1.) Judge McFeeley granted Sgaverdea's motion and ordered closing of the transaction within ten days. (*Id.* at 13.)

A few days later, Sgaverdea filed an Emergency Motion to Alter or Amend Order Granting Debtor's Motion for Extension of Credit for the Purchase of Real Property Upon Simultaneous Closing (Motion to Amend). (Doc. 114.) Sgaverdea stated in this motion that he had been unable to obtain title insurance on the property because multiple transcripts of judgment had been filed against him. (*Id.*) He asked the court to grant the alternative relief requested in his previous motion and allow him to assign the option to purchase to Brad Hall Associates. (*Id.*) MVD opposed this motion. (*See* Doc. 116.) After hearing the parties' arguments, Judge McFeeley granted the motion. (*Id.*)

## UNPRESERVED ISSUES

On appeal, MVD raises a number of issues that were not raised during the bankruptcy court proceedings. Its arguments regarding these issues center primarily on a provision of the Bankruptcy Code governing whether a debtor in possession may assume, reject, or assign any "executory contract or unexpired lease." 11 U.S.C. § 365(a), (f). MVD argues that the bankruptcy court violated § 365 by allowing Sgaverdea to exercise and assign the option to purchase. But MVD candidly observes, "Oddly enough none of the pleadings in this case refer to § 365 . . . ." (Appellant's Br. at 1.)

As a rule, courts sitting in an appellate capacity do not consider issues that were not raised in the lower court. This rule generally applies to bankruptcy appeals. *See, e.g., Gilchrist v. Westcott, (In re Gilchrist)*, 891 F.2d 559, 561 (5th Cir. 1990) ("It is well established that we do not consider

arguments or claims not presented to the bankruptcy court."); *see also United States v. Murdock Mach. & Eng'g Co.*, 81 F.3d 922, 929 n.7 (10th Cir. 1996) (refusing to consider argument, raised for the first time on appeal, that statute regarding executory contracts was violated). However, the Tenth Circuit has indicated that a district court has discretion to consider some issues not addressed by the bankruptcy court. *Eastland Mortgage Co. v. Hart (In re Hart)*, 923 F.2d 1410, 1413-14 (10th Cir. 1991), *overruled on other grounds by Indep. One Mortgage Corp. v. Wicks (In re Wicks)*, 5 F.3d 1372 (10th Cir. 1993). This discretion applies only to legal, and not factual, issues. *Robinson v. Tenantry (In re Robinson)*, 987 F.2d 665, 669 (10th Cir. 1993).

MVD first argues that Sgaverdea could not properly assume the unexpired lease because he did not file a motion to do so. MVD relies on cases holding that a debtor in possession must file a formal motion to assume a lease. *See Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir. 1989); *In re Condo. Admin. Servs., Inc.*, 55 B.R. 792, 798 (Bankr. M.D. Fla. 1985). MVD overlooks cases holding that a formal motion is not required if the debtor in possession states his intent to assume a lease in his reorganization plan and provides adequate notice to the lessor. *See, e.g., Dataprose, Inc. v. Amerivision Commc'ns, Inc. (In re Amerivision Commc'ns, Inc.)*, 349 B.R. 718, 722 (B.A.P. 10th Cir. 2006). As MVD acknowledges, Sgaverdea listed a lease with Thriftway in his reorganization plan and in his bankruptcy petition's schedule of executory contracts and unexpired leases. (Doc. 1, 31.) In both documents, he stated his intent to assume the lease. MVD suggests that it did not receive notice of Sgaverdea's intent to assume the lease and argues that it was not given the opportunity for a hearing on that issue. Whether MVD received adequate notice is a factual issue. *See Kirtley v. Sovereign Life Ins. Co. (In re Durability Inc.)*, 212 F.3d 551, 557-58

& n.7 (10th Cir. 2000). Because this factual issue was not raised below, it cannot be considered on appeal.

MVD also asserts that Sgaverdea's purported assumption of the lease did not occur within the statutory time limits. The statute provides that a debtor/lessee's "unexpired lease of nonresidential real property" is deemed rejected if it is not assumed within 120 days after the petition was filed or by the date the plan is confirmed, whichever occurs first. 11 U.S.C. § 365(d)(4)(A). In contrast, an unexpired lease of residential real property may be assumed any time before confirmation of the plan unless the court sets a different deadline. *Id.* § 365(d)(2).

According to MVD, October 23, 2006 (120 days after filing of the petition) was the deadline for assumption of this lease under § 365(d)(4)(A). Because the bankruptcy court did not approve Sgaverdea's assumption of the lease by that date, MVD believes that the lease must be deemed rejected by operation of law.

In making this argument, MVD presumes that the lease at issue in this case is for "nonresidential real property" within the meaning of § 365(d)(4)(A). Under § 365(d)(2), a lease of residential real property may be assumed any time before confirmation of the plan. MVD seems to concede that Sgaverdea's Motion for Simultaneous Closing or Assignment could be construed as a motion to assume the lease. (*See* Appellant's Br. at 9.) This motion was filed and granted before confirmation of the plan. Therefore, the assumption was timely if § 365(d)(2) applies.

Although Sgaverdea operates a gas station on the property, he also lives there. (Doc. 31 at 7; Tr. at 15, 43, 62.) Courts are divided on the issue of whether a commercial lease of property where people live constitutes a lease of nonresidential real property. *Compare, e.g., In re Care Givers, Inc.*, 113 B.R. 263, 267 (Bankr. N.D. Tex. 1989) ("Real property which has both residential

5

and nonresidential aspects is not 'nonresidential' within the meaning of § 365(d)(4)."), *with In re Condo. Admin. Servs.*, 55 B.R. at 795 ("The [subsection] clearly intended to cover . . . commercial leases, . . . and was not intended to refer to the property, [the] character of which is not really of any consequence."). MVD does not address this split in authority; it merely presumes that § 365(d)(4)(A) applies and argues that the assumption was untimely. Because this issue was not raised below and was not adequately briefed here, it would be inappropriate to consider it on appeal.[3]

MVD further argues that the lease must be deemed rejected under the terms of the reorganization plan. Although the plan stated Sgaverdea's intention to assume the lease with Thriftway, it did not mention either MVD or its predecessor in interest. The plan also stated that any unlisted executory contracts or unexpired leases were being rejected. (Doc. 31 at 7.) Because neither MVD nor its predecessor was mentioned in the plan, MVD asserts that the lease was effectively rejected by the plan's terms. Undoubtedly, the plan does not mention MVD for the simple reason that MVD had not purchased the property when the plan was filed and thus had no interest in the bankruptcy proceedings at that time. At worst, the plan is ambiguous with regard to Sgaverdea's intent, creating a factual issue that was not raised below and therefore should not be considered on appeal.

Next, MVD asserts for the first time on appeal that the option to purchase was not an executory contract and thus was not assumable under § 365. Like MVD's contentions regarding the

---

[3] As noted above, Sgaverdea's reorganization plan, which was filed on October 23, 2006, expressed his intent to assume the lease. Therefore, even if § 365(d)(4)(A) applies, the assumption was arguably timely. *See, e.g. In re LonePine Corp.*, 184 B.R. 370, 375-77 (Bankr. D. Colo. 1994) (holding that although the debtor in possession must move to assume the lease before the statutory deadline, it is not necessary for the court to rule on the motion before the deadline). *But see* 2 WILLIAM L. NORTON, JR., NORTON BANKRUPTCY LAW AND PRACTICE 3d § 46:40 (opining that the result in *LonePine* will probably not apply to cases filed after the effective date of the 2005 amendments to the Bankruptcy Code).

statutory deadline, this argument raises legal issues that have divided courts and commentators. The case law regarding the definition of "executory contract," "has been described as a hopelessly convoluted and contradictory jurisprudence." 2 NORTON, *supra*, § 46:5 (internal quotation marks omitted). The case law regarding whether an option constitutes an executory contract is particularly muddled. MVD relies on the Ninth Circuit's *Helms* decision, which indicates that options are usually not executory because an optionee's failure to exercise an option would not be a material breach of the contract. *Unsecured Creditors' Comm. of Robert L. Helms Constr. & Dev. Co. v. Southmark Corp. (In re Robert L. Helms Constr. & Dev.)*, 139 F.3d 702, 705 (9th Cir. 1998). Other courts treat options as executory contracts. *See, e.g., In re III Enters., Inc. V.*, 163 B.R. 453, 468-69 (Bankr. E.D. Pa.) (citing cases), *aff'd*, *Pueblo Chem., Inc. v. III Enters., Inc. V.*, 169 B.R. 551 (E.D. Pa. 1994); *see also* 2 NORTON, *supra*, § 46:9 & n.13 (citing cases). One court in this circuit has surmised that the Tenth Circuit would not follow the Ninth Circuit's approach. *See In re Simon Transp. Servs.*, 292 B.R. 207, 218-19 (Bankr. D. Utah 2003).

Even if I accepted MVD's argument that the option to purchase was not executory, that ruling would not necessarily achieve the ultimate result MVD seeks. MVD seems to believe that if the option was not an assumable executory contract, then it ceased to exist when Sgaverdea filed for bankruptcy protection. MVD cites no authority to support this view, and it appears contradictory to the Bankruptcy Code. Under the Code, all legal and equitable interests of the debtor become property of the bankruptcy estate upon filing of the petition. *See* 11 U.S.C. § 541(a)(1); *McDonald v. Farmers Ins. Exchange (In re Clay)*, 241 B.R. 534, 537 (Bankr. N.D. Tex. 1999).

MVD's view is also inconsistent with the one case MVD cites regarding executory contracts. In *Helms*, as in this case, the optionor contended that the option was an executory contract that was

7

implicitly rejected in the optionee's bankruptcy because it was not included in the notice of executory contracts that the optionee intended to assume. The underlying theme of *Helms* is that the option would be legally enforceable by the optionee unless it was executory. *See* 139 F.3d at 705 ("[T]he option ceased to be property of the estate only if it was rejected, and that in turn depends on whether or not the option was an executory contract."); *id.* at 706 (remanding for the bankruptcy court "to determine whether this contract was executory at the time of filing, and to fashion a remedy if it finds that the option was not an executory contract and remained an asset of the [bankruptcy] estate"); *see also BNY, Capital Funding LLC v. US Airways*, 345 B.R. 549, 552, 556 (E.D. Va. 2006) (concluding that unexercised option was not executory contract and therefore was property of bankruptcy estate); *Beloit Liquidating Trust v. United Ins. Co.*, 287 B.R. 904, 905-06 (N.D. Ill. 2002) (rejecting argument that debtor's failure to assume insurance policies extinguished insurer's obligation to perform under the policies because the policies were not executory contracts subject to assumption or rejection in bankruptcy).

In summary, it is not clear whether the option was executory and MVD has not explained how a ruling on this issue would make a difference to the outcome of the case. Accordingly, the issue should not be addressed for the first time on appeal.

MVD points out that § 365 requires the debtor to cure any defaults on a lease before the lease may be assumed. *See* 11 U.S.C. § 365(b)(1). Relying on provisions in the lease and sublease making the filing of a bankruptcy petition an event of default, MVD asserts that Sgaverdea was in default. These provisions are unenforceable. *See* 11 U.S.C. § 541(c)(1)(B); *Helms*, 139 F.3d at 704-05; *In re Hutchins*, 99 B.R. 56, 57 (Bankr. D. Colo. 1989).

The sublease granted Sgaverdea the option to purchase only if the sublease was in "good standing" when the option was exercised. (Doc. 99 Ex. C.) MVD asserts that Sgaverdea clearly defaulted on this lease obligation. In a February 2006 amendment to the sublease, Sgaverdea acknowledged that he owed Thriftway $12,726.77 in delinquent rent. (*Id.* Ex. D.) According to MVD, Thriftway objected to confirmation of Sgaverdea's original reorganization plan in November 2006 partly because the plan did not specify that any pre-petition lease arrears would be cured upon assumption.[4] Whether Sgaverdea was in default under the lease or sublease is a factual issue that cannot be raised for the first time on appeal. The fact that Sgaverdea was in default in 2006 does not establish as a matter of law that he was still in default when he assumed the lease in 2007.

In addition to issues involving § 365, MVD raises other issues that were not contested below. MVD asserts that Sgaverdea's option to purchase derived from Thriftway's option. Because Thriftway waived its option to purchase, MVD contends that Sgaverdea's option was effectively waived too. Thriftway's president and general counsel testified that in April 2006 Thriftway executed a written waiver of its option to purchase while the Horns were negotiating a sale of the property to a company that ultimately did not purchase the property. He testified that Thriftway included language in the waiver to reserve Sgaverdea's option to purchase. (Tr. at 14-16.) Although the waiver was a stipulated trial exhibit (*see* Doc. 102), it is not included in the record. Sgaverdea claims in his appellate brief that the waiver states that Thriftway does not waive the option to purchase "to the extent necessary to permit Thriftway to perform its obligations to . . . Sgaverdea under the Sublease, if Sgaverdea exercises his rights to purchase . . . ." (Appellee's Br. at 12.) MVD has not

---

[4] Thriftway's objection to the plan is not in the record and MVD apparently did not request that it be included. It was MVD's obligation to designate items to be included in the record to support its arguments. *See* FED. R. BANKR. P. 8006.

challenged this quotation in its reply brief; therefore, I accept it as accurate and reject MVD's contention that Thriftway waived Sgaverdea's option to purchase. *See Venne v. Lenk (In re Lenk)*, 48 B.R. 867, 869 (W.D. Wis. 1985) (accepting fact in appellee's brief as true because appellant did not file a reply brief challenging the fact).

MVD further asserts that there is no evidence that Plateau assigned its interest to Thriftway or that the lease continued in effect after September 30, 1997. Not only are these issues unpreserved, they are patently frivolous. MVD's attorney signed and filed in the bankruptcy court a document entitled "MVD Specialists, LLC's and Nicolae Sgaverdea's Stipulated Facts." (Doc. 103.) One of the stipulated facts in this document was "Plateau, Inc. assigned its Lessee's interest to Thriftway Marketing Corp." (*Id.* ¶ 2.) The lease states that its initial term was from October 18, 1977 to September 30, 1997. (Lease ¶ 3.) While it is true that no direct evidence of a lease extension was presented, MVD concedes that "the parties appeared to believe it had been extended." (Appellant's Br. at 6.) Indeed, MVD's attorney argued at the second hearing that "MVD's lease is with Thriftway" and "that lease that MVD had with Thriftway expired on September 30th, 2007." (Tr. (Oct. 24, 2007) at 5.)[5]

---

[5] MVD repeats its frivolous contention regarding assignment of the lease to Thriftway in its reply brief. MVD asserts that "[t]here is a completely hypothetical sub lease [sic], never admitted into evidence, between Plateau, Inc. and Thriftway," that there is a "missing link between Plateau and Thriftway," and that Sgaverdea failed "to demonstrate that link in the chain." (Reply Br. at 1.) I allowed MVD to file the reply brief late. (CV 07-1089 Doc. 21.) On the day the brief was due, at 4:51 p.m., MVD filed a motion for extension of time. (*Id.* Doc. 19.) Although it requested an extension to May 26, 2007, it did not file the brief until 6:26 p.m. on May 27, 2007. (*Id.* Doc. 20.) This was part of a pattern of dilatory conduct by MVD's counsel. He sought two extensions of time to file his opening brief. (*Id.* Doc. 11, 13.) Both motions were filed late in the afternoon on the day the brief was due. Similarly, Sgaverdea's counsel incorrectly calendared the due date for his brief and received an extension of time after the due date passed. (*Id.* Doc. 17.)

**LEASE INTERPRETATION**

In the bankruptcy court, the parties' disputes revolved around the interpretation of the lease and sublease. They disagree about whether Sgaverdea can exercise the option to purchase even though he intends to continue operating a gas station on the property. This dispute hinges on the interpretation of paragraph 16 of the lease, which states:

> 16. OPTION TO PURCHASE: The Premises are one of twenty-six (26) locations which are being leased to the Lessee effective October 18, 1977, and therefore this Lease is subject to the terms and conditions set forth in that certain Agreement to Purchase and Lease dated October 18, 1977, which allows Lessee at all times until the termination of all such leases, subject to certain conditions as hereinafter set forth, at its option to purchase any of the leased land which then remains subject to a lease entered pursuant to the aforesaid Agreement.
>
> If at any time during the initial or extended term of the lease Lessee decides not to operate this location as a retail gasoline service station, Lessee may purchase the Premises subject to the following terms and conditions:
>
> (a) Within fifteen (15) days after receipt by Lessor of written notice from Plateau that it desires to initiate the following property valuation procedure for the purpose of deciding to exercise its purchase option: the parties to the Lease shall initiate steps to determine the value of the land as follows . . . .

Subdivisions (i) and (ii) then describe the valuation procedure. Subdivision (b) sets a deadline for exercising the option and closing the transaction after the conclusion of the valuation procedure and requires the purchase to be made in cash. Subdivision (c) obligates the lessor to provide a survey and clear title. Subdivision (d) prohibits the use of brokers. Subdivision (e) provides that purchase of the land will not affect any lease regarding buildings or improvements. Finally, subdivision (f) states:

> (f) In the event the Lessor sells the land subject to the Lease to any party other than a member of the Calvin P. Horn or H. B. Horn families, a Horn family trust or a Horn family foundation, the property valuation procedure herein described shall not be used and Lessee may exercise its option to purchase the premises for a period of ninety (90) days after such sale at the same price at which Lessor sold the property.

11

> In the event Plateau does not exercise its option to purchase the Premises, the lease shall continue in accordance with this land lease agreement and without prejudice to any subsequent request by Lessee for valuation of the Premises and exercise of its option to purchase. The option to purchase shall terminate upon termination of the Lease except with regard to any valuation and option election procedure commenced prior to such termination, in which case, the option to purchase shall continue beyond the termination of the Lease until it is concluded by Lessee either purchasing the premises or declining to exercise its option.

MVD contends that the language "If at any time . . . Lessee decides not to operate this location as a retail gasoline service station, Lessee may purchase the Premises subject to the following terms and conditions . . ." applies to all of the subdivisions that follow, including subdivision (f). Under this interpretation, Sgaverdea could not exercise the option because he intends to continue operating a gas station on the property.

Judge McFeeley rejected MVD's interpretation of paragraph 16 and concluded that subdivision (f) created an alternative purchase option arising upon the sale of the property to an entity not affiliated with the Horn family. He relied on the canons of contract construction, which require a contract to be construed as a harmonious whole and which prohibit reading one provision to annul another provision unless there is no other reasonable interpretation. *See Pub. Serv. Co. v. Diamond D Constr. Co.*, 33 P.3d 651, 659-60 (N.M. Ct. App.), *cert. quashed*, 34 P.3d 610 (N.M. 2001). Judge McFeeley concluded that MVD's interpretation of the lease "would effectively write out the purchase option provided under subparagraph 16(f)." (Doc. 112 at 7.)

The parties disagree about the standard of review for Judge McFeeley's interpretation of the lease. MDV asserts that *de novo* review is appropriate because this case presents only legal issues. Sgaverdea, on the other hand, asserts that the clearly erroneous standard applies because Judge McFeeley made a factual finding that the lease is ambiguous.

12

A bankruptcy court's legal determinations are reviewed *de novo* while its factual findings are reviewed for clear error. *Morris v. Hicks (In re Hicks)*, 491 F.3d 1136, 1139 (10th Cir. 2007). Although federal law supplies the standard of review, state law governs the contract issues presented. *See Deepwater Inv., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1106 (10th Cir. 1991); *Schott v. WyHy Fed. Credit Union (In re Schott)*, 282 B.R. 1, 7 (B.A.P. 10th Cir. 2002). It is undisputed that New Mexico law applies to the contracts at issue in this case. Under New Mexico law, the issue of whether a contract is ambiguous is a matter of law to be decided by the trial court. *Mark V., Inc. v. Mellekas*, 845 P.2d 1232, 1235 (N.M. 1993). The court may consider collateral evidence of the circumstances surrounding the execution of the agreement to determine whether an ambiguity exists. *Id.* If the court determines that the contract is ambiguous, the meaning to be assigned the unclear terms is a question of fact. *Id.* But if the parties do not offer evidence of the facts and circumstances surrounding execution of the agreement, the court may resolve any ambiguity as a matter of law by interpreting the contract using the canons of contract construction. *Id.* at 1236; *accord Behles-Giddens, P.A. v. Raft (In re K.D. Co.)*, 254 B.R. 480, 488 (B.A.P. 10th Cir. 2000) (stating that *de novo* review applies to the issue of whether a contract is ambiguous, but the clearly erroneous standard applies if the bankruptcy court's interpretation was based on the record, testimony, or other extrinsic evidence).

Here, Judge McFeeley held an evidentiary hearing, but no evidence was presented regarding the circumstances surrounding the execution of the lease and no representative of the Horns or Plateau testified regarding their intent. Although paragraph 16 states that this lease was one of twenty-six leases between the parties and that it was "subject to the terms and conditions set forth in that certain Agreement to Purchase and Lease dated October 18, 1977," which allowed the lessee

13

to purchase the properties, no evidence was presented concerning any of the other leases or "the Agreement to Purchase and Lease." Judge McFeeley did not expressly state whether the lease was unambiguous. However, he arrived at his interpretation of paragraph 16 without reference to any extrinsic evidence and by applying the canons of contract construction. I therefore conclude that Judge McFeeley construed the lease as a matter of law and that *de novo* review is appropriate.

Paragraph 16 begins by stating that this lease is one of twenty-six leases between the parties and that it is subject to the terms of an "Agreement to Purchase and Lease dated October 18, 1977," which allows the lessee "at all times until the termination of all such leases, subject to certain conditions as hereinafter set forth, at its option to purchase any of the leased land which then remains subject to a lease entered pursuant to the aforesaid Agreement." MVD's interpretation would change "at all times" to "only if a gas station is not operated on the property." MVD seems to believe that this interpretation is supported by the phrase "subject to certain conditions as hereinafter set forth." A more reasonable interpretation—one that preserves the meaning of "at all times"—is that the lease conditions the lessee's purchase on compliance with one valuation procedure if a gas station is no longer operated on the property and with another valuation procedure if the Horns sell the property to any unaffiliated entity.[6]

MVD additionally argues that subdivision (f) required Sgaverdea to complete his purchase of the property, including tender of the purchase price, within ninety days after MVD purchased the property. Subdivision (f) states that if the property is sold to an entity unaffiliated with the Horns, "Lessee may exercise its option to purchase the premises for a period of ninety (90) days after such

---

[6] Because I agree with Judge McFeeley's interpretation after a *de novo* review, I necessarily would not have found the interpretation to be clearly erroneous had I applied that standard of review.

sale at the same price at which Lessor sold the property." As Judge McFeeley noted, the lease is silent regarding whether the lessee must complete the purchase within the ninety-day period. In this situation, as Judge McFeeley also noted, the general rule is that the option may be exercised by giving notice; tender of the purchase price is unnecessary. *El Paso Natural Gas Co. v. W. Bldg. Assocs.*, 675 F.2d 1135, 1140 (10th Cir. 1982); *Cranetex, Inc. v. Mountain Dev. Corp.*, 738 P.2d 123, 124 (N.M. 1987).

The parties have stipulated that MVD purchased the property on March 28, 2007, that ninety days from March 28, 2007 was June 26, 2007, and that MVD received notice of Sgaverdea's exercise of the option on June 8, 2007. (Doc. 103 ¶¶ 10, 12, 15.) Therefore, Sgaverdea's exercise of the option was timely.[7]

MVD next points out that nothing in the lease or the other operative documents allows for a simultaneous closing. As Judge McFeeley observed, nothing in these documents prohibits a simultaneous closing either. (*See* Doc. 112 at 13.) In any event, this issue is moot because Sgaverdea was unable to complete the simultaneous closing and Judge McFeeley granted his Motion to Amend, permitting Sgaverdea to assign the option to purchase.

## LEASE ASSIGNMENT

MVD maintains that the option to purchase was not assignable. The contours of this argument have changed over time. In the Motion for Simultaneous Closing or Assignment, which

---

[7] The parties disagree as to whether the lease required the Horns or MVD to notify Thriftway or Sgaverdea of the sale and whether sufficient notice was provided. They also disagree about whether MVD complied with the lease's requirement that a purchaser acknowledge the lease in recordable form. If Sgaverdea had failed to exercise the option within the ninety-day period, the lack of notice might excuse this failure. Otherwise, the notice issues are not relevant. Because Sgaverdea's exercise of the option was timely, it is unnecessary to consider these issues.

15

was filed on July 25, 2007, Sgaverdea asserted that MVD refused to acknowledge his right to assign the option to purchase. (Doc. 84.) In its response to this motion, MVD admitted that on July 23, 2007, Sgaverdea's attorney advised its attorney that Sgaverdea intended to assign the option. (Doc. 88.) The response stated that the lease unambiguously allowed only the lessor, and not the lessee, to make an assignment. (*Id.*)

In fact, paragraph 20 of the lease, which begins with "<u>ASSIGNMENT BY LESSEE</u>," grants the lessee "the right without consent of the Lessor, to assign this Lease at any time during the term of this Lease or any extension or renewal thereof . . . ."[8] The sublease in turn grants Sgaverdea the right of assignment. (Doc. 99 Ex. B ¶ 15.)

At the conclusion of the first hearing, held on September 28, 2007, Sgaverdea's attorney stated that Sgaverdea was worried because his lease was set to expire in two days. Judge McFeeley then asked, "Mr. Baird, would you consent, and you may talk to your counsel and go out in the hall if you need to, to a 30-day extension of the lease assuming the rent's paid on time?" Baird replied, "I have no objection, your Honor." (Tr. at 124-25.) Sgaverdea's attorney inquired whether Judge McFeeley anticipated making a ruling within thirty days, and the judge indicated that thirty days was the "outside limit." (*Id.* at 125.)

On October 19, 2007, Judge McFeeley filed his order allowing the simultaneous closing and finding it unnecessary to consider Sgaverdea's alternative request to assign the option to Brad Hall Associates. (Doc. 112.) The order notes that "MVD Specialists agreed to allow the Debtor to remain on the Property through October 31, 2007, and pay rent for that period . . . ." (*Id.* at 5.) On

---

[8] In arguing that the lessee could not assign the lease, MVD's counsel was apparently relying on a copy of the lease that was missing the page containing paragraph 20. (*See* Doc. 116 at 2 n.1.)

16

October 23, 2007, Sgaverdea filed the Motion to Amend. (Doc. 114.) At the hearing on this motion, MVD's attorney conceded that the lease "does allow for an assignment," but made the following argument:

> The key in this new factors that have arisen under this is the fact that MVD does not have a lease with Mr. Sgaverdea [sic]. MVD's lease is with Thriftway, and then Thriftway has a sublease with Mr. Sgaverdea. So, when Scott Baird of MVD agreed that Mr. Sgaverdea could stay on the property for payment of rent, there was no extension of a lease because there was no lease to begin with, with MVD and with Mr. Sgaverdea.
>
> Your Honor, that lease that MVD had with Thriftway expired on September 30th, 2007; and as far as we know the sublease between Thriftway and Mr. Sgaverdea also would have expired on that day.

(Tr. (Oct. 24, 2007) at 5.) Summing up, counsel argued that Sgaverdea's motion should not be granted "because debtor does not have a lease with MVD; the lease has expired; [and] the provisions for assignment did not occur prior to the expiration of the lease . . . ." (*Id.* at 7.)[9]

After reviewing the transcript of the first hearing, Judge McFeeley found that Baird agreed to an extension of the lease through October 31, 2007. (Doc. 116 at 2.) "Having consented to an extension of the Lease . . . MVD Specialists remains subject to its provisions and those of the Sublease Agreement through the extended term." (*Id.* at 3.)

On appeal, MVD asserts that it is not in privity of contract with Sgaverdea. MVD contends that it is unclear which lease was being discussed during the colloquy between Judge McFeeley and Baird. It claims that the purpose of the colloquy "was to permit closing of a sales transaction through simultaneous closing despite the looming expiration of the Land Lease." (Appellant's Br. at 6.)

---

[9] Counsel asserted that the lease required compliance with certain conditions before making an assignment and those conditions had not been met. Counsel argued that because the court's order had held MVD to technicalities in the lease, strict adherence to the assignment technicalities should also be required. (Tr. (Oct. 24, 2007) at 6-7.) MVD's appellate counsel has not raised this argument.

17

MVD states that "any agreement by Mr. Baird to accept another month's worth of rent from the Debtor, a party three steps removed from the Land Lease, was contingent upon a closing that never occurred, and was not in any event intended to extend the lease period, but intended merely to extend a possessory interest in real estate." (*Id.*)

Judge McFeeley's finding on this issue is not clearly erroneous. Throughout the bankruptcy court proceedings, MVD never denied that Sgaverdea had rights under the lease. It never denied, for example, that Sgaverdea had an option to purchase the property if the conditions of paragraph 16 were met. Although MVD denied that Sgaverdea had the right to assign the option, this denial was apparently based on its mistaken belief that the lease did not contain an assignment clause in favor of the lessee.

It is apparent from Sgaverdea's Motion for Simultaneous Closing or Assignment and MVD's response that Sgaverdea attempted to assign the option before the lease and sublease expired, but MVD refused to sell the property to an assignee. Because of this refusal, Sgaverdea filed the motion seeking, among other relief, permission to assign the option. The hearing on the motion was held on Friday, September 28, 2007 and the leases were set to terminate on Sunday, September 30, 2007. Although it was evident that no ruling would be made before the termination date, MVD did not assert at the hearing that a decision allowing assignment would be ineffectual. Instead, Baird stated that he had "no objection" to Judge McFeeley's suggestion of "a 30-day extension of the lease." Only after the lease and sublease had expired under their express terms, when it appeared that the bankruptcy court was going to grant Sgaverdea's alternative request to assign the option, did MVD assert that Sgaverdea could not assign the option because he was not a party to the lease and because the lease had expired. Against this backdrop, I cannot say that Judge McFeeley committed clear error

18

in finding that MVD agreed to extend all provisions of the lease, rather than only to allow Sgaverdea to remain on the property.

## MOTION TO SUPPLEMENT THE RECORD

MVD filed a motion to supplement the appellate record with Sgaverdea's reorganization plan and the schedules attached to his bankruptcy petition. (Doc. 1, 31.) MVD did not designate these documents for inclusion in the record. Although the motion states that it is opposed, Sgaverdea did not file a response. MVD cited these documents to support its arguments regarding lease assumption. I have taken judicial notice of the documents by accessing the bankruptcy court record and have concluded that they do not support MVD's arguments.

## CONCLUSION

For the reasons stated above, I recommend that the bankruptcy court's orders be affirmed and that MVD's motion to supplement the record be denied as moot.

**THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

*William P. Lynch*
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE